UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ERIC SHELLEY, individually
And on behalf of all others similarly situated,

      Plaintiff,                           Case No. 0:23cv60415

vs.

WILL RICHARDSON, M.D., P.A d/b/a
NATURA DERMATOLOGY & COSMETICS,

      Defendant.
_____/

## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, Will Richardson, M.D., P.A. d/b/a Natura Dermatology & Cosmetics ("Richardson" or "Defendant"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), hereby files this Motion to Dismiss Plaintiff's Complaint, and in support of this motion states as follows:

### INTRODUCTION

1. Plaintiff alleges that he received an unsolicited text message from Richardson. Plaintiff asserts two Counts based on this text message. First, Plaintiff alleges that Richardson violated the Do Not Call provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c). Second, Plaintiff alleges that Richardson violated the automated dialing provision of the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2. Count I should be dismissed for two independent reasons. Following this Circuit's decision in *Salcedo v. Hanna*, the Court should dismiss the claim for failure to demonstrate Article III Jurisdiction, because Plaintiff has not alleged any cognizable injury-in-fact due to the alleged

violation of the 47 U.S.C. § 227.  Moreover, Plaintiff fails to satisfy the prerequisite of Section 227(c)(5) that Plaintiff have "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." Despite a conclusory allegation that Plaintiff received multiple text messages, Plaintiff only alleges a single text message from Defendant.  Therefore, Plaintiff does not have a private right of action under the TCPA.

      3.      Like Count I, Plaintiff's FTSA claim should be dismissed because Plaintiff lacks Article III standing.  Additionally, Count II is preempted by the automated telephone dialing system ("ATDS") restrictions in the TCPA.  Since Plaintiff does not allege use of an ATDS, to the extent that his claim relies upon application of the FTSA to other equipment, the claim conflicts with the federal statute and is preempted.

**I.      Standard of Review**

"[I]t's long been known that even at the pleading stage, the 'litigant must clearly and specifically set forth facts' to satisfy the requirements of Article III." *Muransky v. Godiva Chocolatier, Inc.,* 979 F.3d 917, 924–25 (11th Cir. 2020) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). The "general factual allegations must 'plausibly and clearly allege a concrete injury.' " *Muransky,* 979 F.3d at 924 (quoting *Thole v. U. S. Bank N.A.,* 207 L. Ed. 2d 85 (2020)). The Court may not "imagine or piece together an injury sufficient to give [a] plaintiff standing when it has demonstrated none," and is powerless to "create jurisdiction by embellishing a deficient allegation of injury." *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229–30 (11th Cir. 2000) (citing *Whitmore,* 495 U.S. at 155, 110 S. Ct. 1717). "Article III standing requires a concrete injury even in the context

of a statutory violation." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 341 (2016), as revised (May 24, 2016).

> **II. Plaintiff's allegations do not give rise to Article III Standing for Either Count I or II.**

In *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), the Court of Appeals for the Eleventh Circuit addressed Article III standing in the context of text messages. *Salcedo* held that allegations of harm were insufficiently concrete where the plaintiff pleaded that he suffered harms from an unsolicited text message that "caused Plaintiff to waste his time" and "resulted in an invasion of Plaintiff's privacy and right to enjoy the full utility of his cellular device." *Id.* at 1167, 1172; *see also Drazen v. Pinto,* 41 F.4th 1354, 1360-62 (11th Cir. 2022) (rejecting class certification because the receipt of one unwanted telephone call is insufficient to meet the concrete injury requirement for Article III standing).

Similarly, in *Eldridge,* the plaintiff brought a putative class action against the defendant alleging receipt of marketing text messages sent in violation of the TCPA. 446 F. Supp at 1065. The plaintiff alleged several "harms" in support of standing to bring claims under the TCPA for unsolicited text messages. *Id.* at 1070. Those alleged harms included "invasion of privacy, intrusion upon seclusion, and wasted time" related to "five unauthorized text messages." *Id.* The Court found those alleged harms to be "qualitatively indistinguishable from those alleged in *Salcedo.*" *Id.* at 1072. Because the plaintiff failed to demonstrate any concrete injury, the Court was without subject matter jurisdiction. *Id.* at 1072-73.

Plaintiff's Complaint closely mirrors the allegations by plaintiff in *Salcedo*. In *Salcedo*, the plaintiff alleged a *single* text message caused Plaintiff to waste time in answering or addressing the message and was an invasion of his privacy and right to enjoy the full utility of his cellular device. *Salcedo*, 936 F.3d at 1167. Here, the Plaintiff identifies *one* "telephonic sales call" to

Plaintiff's cellular telephone number.[1] Compl. ¶ 11. Plaintiff does not plead a concrete injury-in-fact stemming from the text message, but instead pleads, in a single paragraph, that the text message caused "invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass and conversion" and that the message "inconvenienced Plaintiff and caused disruption to his daily life." Compl. ¶ 37. As in *Salcedo*, which is binding authority, this is insufficient to create federal subject matter jurisdiction. *Salcedo*, 936 F.3d at 1172; *see also Frater v. Lend Smart Mortg*., LLC, 22- 22168-CIV, 2022 WL 4483753 (S.D. Fla. 2022); *see Eldridge v. Pet Supermarket Inc*., 446 F. Supp. 3d 1063 (S.D. Fla. 2020), appeal dismissed, 20-11321-HH, 2020 WL 3864935 (11th Cir. 2020).

Courts in this circuit have applied the same Article III analysis to claims under the FTSA. In *Frater,* a case involving facts nearly identical to *Drazen*, the plaintiff filed a putative class action against the defendant mortgage company for violations of the FTSA. *Frater,* 2022 WL 4483753 at 1. The defendant moved to dismiss on the grounds that Article III standing was lacking. *Id.* In finding that the allegations in the complaint were insufficient to create Article III standing, the court held that "the Plaintiff has failed to allege a sufficient concrete injury-in-fact to demonstrate that she—or the members of the putative class—have standing to bring a claim under FTSA." *Id.* at *2; *see also Salcedo,* 936 F.3d at 1172; *Drazen v. Pinto,* 41 F.4th 1354, 1360-62 (11th Cir. 2022); *Grigorian v. FCA US LLC,* 838 F. App'x 390, 394 (11th Cir. 2020). Most recently, the court in *Fontanez v. Wolverine World Wide, Inc*, held that even a "handful of unsolicited text messages" was not enough to establish concrete injury. 8:22-CV-2538-KKM-TGW, 2022 WL 17959844 (M.D. Fla. 2022).

---

[1] Although Plaintiff uses the term "telephonic sales call" the Complaint clearly cites a screenshot of a text message and only makes references to text message communications.

As the Eleventh Circuit has held, "Article III standing is not a '[y]ou must be this tall to ride' measuring stick." *Salcedo*, 936 F.3d at 1172 (citations omitted). The test to determine whether an injury is concrete is qualitative, not quantitative. *Id*. The Plaintiff's allegations that he received text messages does not alone suffice to clear the bar. Compl. ¶ 12. The fact that the Plaintiff cannot identify a single specific harm he allegedly suffered, beyond offering a conclusory recitation of harms like "aggravation," and "annoyance," means that he has still failed to clear the qualitative floor for a concrete injury and, therefore, he (and the purported class) lacks standing to bring a claim under the TCPA. *Salcedo*, 936 F.3d at 1172-73; *Eldridge*, 446 F. Supp. 3d at 1072; *Fontanez*, 2022 WL 17959844. Thus, Counts I and II must be dismissed.

**III.    Count I should be dismissed for failure to plead the statutory requirements.**

Section 227(c)(5) of the TCPA provides:

> Private right of action
>
> A person who has received *more than one telephone call within any 12-month period* by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.

47 U.S.C. § 227(c)(5) (emphasis added).

Plaintiff has not pled facts to support an allegation that he received "more than one telephone call within any 12-month period," as required by Section 227(c)(5).[2] Although the Complaint contains several conclusory allegations that Richardson sent "text messages" (plural), the sole factual allegation regarding such messages is a single text message shown in a screenshot from Plaintiff's phone. Compl. ¶ 11. Nowhere else does Plaintiff allege facts showing another text message received by Plaintiff. Plaintiff's sole allegation in this regard is the assertion that the "text messages" sent by Richardson included but were not limited to the screenshot alleged in Paragraph 11. *Id.*

These allegations are not sufficient, as a matter of law, to satisfy 47 U.S.C. § 227(c)(5). Plaintiff alleges with specificity only a single text message from Defendant. The mere conclusory allegation of "text messages" (plural) is not enough to satisfy Plaintiff's burden to plead sufficient facts to support his TCPA claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (stating that conclusory allegations are not entitled to be assumed true). It is entirely within Plaintiff's control to plead specific facts demonstrating more than one text message from Defendant. Plaintiff alleges that he has been the sole user and/or subscriber to the cellular telephone number in question. Compl. ¶ 19. Text messages from the same number typically are displayed in a chain that would show prior messages, if any, from the same number. *Epps v. Earth Fare, Inc.*, No. CV 16-08221 SJO (SSx), 2017 WL 1424637, at *2 (C.D.Cal. Dec. 21, 2018) ("It is in the interest of justice for the Court to take judicial notice of the message log because it is a full record of the messages ….") If Plaintiff received additional text messages from Richardson originating from a different number, Plaintiff would be able to identify those by the business name and/or subject matter of the text

---

[2] Although the TCPA refers to a "telephone call," courts and the FCC have generally held that text messages are "calls" within the meaning of the TCPA. *Eldridge*, 446 F. Supp. 3d at 1063 ("A text message to a cell phone qualifies as a 'call' under the TCPA."); *see Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667, (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA]").

message. Yet, Plaintiff offers no facts to support any messages other than the single message appearing in the screenshot. Absent specific evidence of at least a second text message, the Complaint fails to plead facts sufficient to support a private right of action under Section 227(c)(5). Count I therefore should be dismissed on this ground for failure to state a claim.

### IV. Count II is preempted by the TCPA.

"Preemption doctrine is rooted in the Supremacy Clause and grows from the premise that when state law conflicts or interferes with federal law, state law must give way." *Teper v. Miller*, 82. F. 3d 989, 993 (11th Cir. 1996). Preemption of state law may be express, implied, or otherwise inferred from the federal regulatory scheme. *Hillsborough Cty. v. Automated Med. Labs*, 471 U.S. 707, 713 (1985); *Bailey v. Rocky Mountain Holdings, LLC*, 136 F. Supp. 3d 1376, 1379-80 (S.D. Fla. 2015) ("Preemption may be either express or implied and is compelled whether Congress' coming is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'") (citation omitted).

Preemption may also occur due to a conflict between a state regulatory provision and federal law. The United States Supreme Court has opined that federal agency regulation can preempt, or supersede, state law in certain instances. The "critical question in any preemption analysis is always whether Congress intended that federal regulation supersede state law." *Louisiana Pub. Serv. Comm'n*, 476 U.S. 355, 369 (1986). In making that determination, the Federal Communications Commission ("FCC") has articulated that federal law and policy preempt state action in certain circumstances:

1. where compliance with federal and state law is impossible (commonly known as "impossibility" preemption);
2. when federal and state law actually conflict;
3. where state law is an obstacle to Congressional objectives;
4. where Congress expressly intends to preempt state law;
5. where federal law implicitly blocks state regulation; or

7

      6. where comprehensive Congressional legislation occupies a field of regulation.[3]

Plaintiff's FTSA claim presents an actual conflict with federal law. As explained below, to the extent that Plaintiff relies upon a claim based upon the use of automated equipment that does not constitute an ATDS under the TCPA, the claim conflicts with the provisions of the TCPA and would serve as an obstacle to Congressional objectives.

Count II of the Complaint alleges that Defendant violated the FTSA, § 501.059, by "utilizing an automated system for the selection or dialing of telephone numbers." Compl. ¶ 62. Notably, Plaintiff does not allege that Defendant used an ATDS to originate the calls. This was wise, as the U.S. Supreme Court held in *Facebook v. Duguid* that an ATDS under the TCPA does not encompass telephone equipment that merely stores telephone numbers and is capable of dialing them automatically. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1170 (2021). Instead, the Supreme Court held that Congress' definition of an ATDS, commonly referred to as an autodialer, "requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." *Id.*, 114 S. Ct. at 1170. Plaintiff's Complaint, which does not allege that Defendant used equipment that uses a random or sequential number generator, would not satisfy the *Duguid* standard under the TCPA.

Presumably, this is why Plaintiff pleads Count II under the FTSA rather than the TCPA. The FTSA prohibits a telephonic sales call that "involves an automated system for the selection or dialing of telephone numbers" when the call is made without the prior express written consent of the called party. FTSA, Fla. Stat. §501.059(8)(a). The term "automated system for the selection or dialing of telephone numbers" is not defined in the FTSA and case law to date has not

---

[3] *See Vonage Holdings Corporation Petition for Declaratory Ruling Concerning an Order of the Minnesota Public Utilities Commission*, Memorandum Opinion and Order, 19 FCC Rcd 22404, 22414-415 n.66 (2004) (citations omitted).

established its meaning. *Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, 603 F. Supp. 3d 1334 (S.D. Fla. 2022) (acknowledging that the term "automated" is not defined by the FTSA.) As a result, the precise equipment that constitutes an "automated system" under the FTSA has not been determined.

Plaintiff's Complaint requires the Court to construe the FTSA's "automated system" language more broadly than the TCPA. Specifically, the Complaint would require that the Court prohibit the use of a messaging platform that merely selects or dials phone numbers from a stored list. Such a reading, however, would conflict with the interpretation of the TCPA and with Congress' intent to establish uniform national rules for automated equipment used in interstate calling.

For over fifty years, federal telecommunications law has recognized that telecommunications equipment used by customers inherently implicates both federal and state jurisdiction. *See, e.g., North Carolina Utilities Commission v. FCC*, 537 F.2d 787, 791 (4th Cir. 1976) ("Usually it is not feasible, as a matter of economics and practicality of operation, to limit the use of such equipment to either interstate or intrastate transmission"). Under this precedent, telecommunications law has consistently found that where state regulation of the use of telecommunications equipment for intrastate purposes conflicts with permissible use under federal regulations, the state law is preempted. *Id.* 537 F.2d at 793 (states may not engage in regulation of telephone equipment "that in effect encroaches substantially upon the [FCC's] authority"). Because it is not feasible, as a matter of economics or practicality, for example, to use certain telecommunications to send interstate marketing calls (or text messages) and different equipment for intrastate calling, only one rule of use may apply, the federal rule.

This aspect of telecommunications regulation compels the conclusion that the FTSA is preempted by federal law to the extent that the FTSA would restrict the use of telecommunications equipment in conflict with the confines of the TCPA. Call originators (or originators of text messages) cannot use one set of equipment to comply with the TCPA for interstate calls and a separate set of equipment to comply with the FTSA for intrastate calls. Yet, Plaintiff's Complaint would compel just that result. If the FTSA prohibits use of equipment that the TCPA permits, it would present an unavoidable conflict between federal and state law. Under these circumstances, the broader reading of the FTSA's "automated system" language would be preempted by the TCPA.

Finally, the TCPA's carve-out provision for certain intrastate regulations does not save Plaintiff's Complaint. Section 227(e)(1) of the TCPA preserves state authority to impose "more restrictive intrastate requirements on, *inter alia*, the use of "automated telephone dialing systems." The FTSA's restrictions, to the extent they apply to telecommunications equipment that does not constitute an ATDS do not fall within this preservation of authority.

First, Section 227(e)(1) clearly applies only to restrictions on the use of "automated telephone dialing systems." This language is identical to the restrictions on the use of an "automated telephone dialing system" elsewhere in the TCPA and, therefore, per *Duguid* would permit state restrictions solely on the use of equipment that employs a random or sequential number generator. The Supreme Court found logic in Congress' limitation of its regulations to such equipment. "These prohibitions target a unique type of telemarketing equipment that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity." *Duguid*, 114 S. Ct. at 1171. The Court further explained that, "[e]xpanding the definition of an autodialer to encompass any equipment that merely stores and dials telephone numbers

would take a chainsaw to these nuanced problems when Congress meant to use a scalpel." *Id.* It would make no sense to interpret Section 227(e)(1) to permit states to apply a chainsaw to intrusive telephone calls when Congress chose instead to use a scalpel. Therefore, the preservation of state authority under Section 227(e)(1) should be read only to apply to restrictions on the use of an ATDS as defined by the TCPA.

Second, the FCC has already concluded that more intrusive regulations that apply to both interstate and intrastate calling would conflict with federal law. In a 2003 order, the FCC addressed Section 227(e)(1) and federal preemption in the context of the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 8 FCC Rcd. 14014 (2003). In that order, the FCC discussed Section 227(e)(1), noting that its scope was ambiguous with regard to whether it applied to both interstate and intrastate calls. *Id.* ¶ 82. Considering a state regulation's potential impact on interstate calling, the FCC stated:

> Although Section 227(e) gives states authority to impose more restrictive intrastate regulations, we believe that it was the clear intent of Congress generally to promote a uniform regulatory scheme under which telemarketers would not be subject to multiple, conflicting regulations. We conclude that inconsistent interstate rules [sic] frustrate the federal objective of creating uniform national rules, to avoid burdensome compliance costs for telemarketers and potential consumer confusion. …
>
> We therefore believe that any state regulation of interstate telemarketing calls that differs from our rules almost certainly would conflict with and frustrate the federal scheme and almost certainly would be preempted.

*Id.* at ¶¶ 83-84 (footnotes and paragraph numbers omitted). Because the use of telecommunications equipment inherently implicates both interstate and intrastate calling, any state regulation of equipment other than an ATDS conflicts with federal law. To the extent that Plaintiff's Complaint relies upon the use of "an automated system for the selection or dialing of

11

telephone numbers" rather than the use of an ATDS as defined in the TCPA, Plaintiff's claim would be preempted.

Consequently, Count II of Plaintiff's Complaint should be dismissed because the FTSA is preempted by TCPA's definition of autodialer.

## CONCLUSION

For the foregoing reasons, Defendant, Will Richardson, M.D., P.A. d/b/a Natura Dermatology & Cosmetics, respectfully requests that this Honorable Court enter an Order dismissing the counts against it in the Complaint with prejudice and awarding any other relief deemed just and appropriate.

Respectfully submitted by,

/s/ *Daniel L. Alvarez*
**NELSON MULLINS**
Gabriel L. Imperato
Florida Bar No. 623652
Daniel L. Alvarez
Florida Bar No. 016688
100 S.E. Third Avenue, Suite 2700
Fort Lauderdale, Florida 33394
Phone: (952)764-7060 / Fax: (954)761-8135
Gabriel.Imperato@NelsonMullins.com
Daniel.Alvarez@NelsonMullins.com
Traci-Lewis@NelsonMullins.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 3, 2023, the foregoing document was filed with the Clerk of the Court using CM/ECF. I further certify that the foregoing document was served on counsel whom have provided designated e-mail addresses for service via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Daniel L. Alvarez*
Daniel L. Alvarez